## Case No. 5,230.

### GARDNER v. ISAACSON.

[Abb. Adm. 141;[1] 8 N. Y. Leg. Obs. 77; 3 Am. Law J. (N. S.) 193.]

District Court, S. D. New York. Jan. 24, 1848.

Griffin & Larocque, for motion.
W. Q. Morton and D. McMahon, opposed.

BETTS, District Judge. The respondent having been arrested on bailable warrants in personam, issued out of this court, in these three causes, and having given no bail to the marshal, was held in custody under the arrest. On the return day of the warrant, the respondent entered into stipulations, conformably to the terms of rule 38 of this court, adopted in 1838; and a motion is now made in his behalf, that he be forthwith discharged. The libellants insist that the marshal is bound to retain the respondent in custody until bail-bonds or stipulations are executed pursuant to the supreme court rules of 1845.

The question raised by the motion is, whether the respondent is entitled to his release, on giving stipulations, with sureties, that he will appear and pay all costs decreed against him, and will himself perform and abide all orders and decrees of the court in the cause, or deliver himself personally for commitment in execution thereof,—such being the course of practice in this court; or whether the rules adopted by the supreme court of the United States, in 1845, have established a different practice in this respect, which the respondent is bound to comply with. By the practice of the English court, as laid down by Clarke, and recognized by Browne, the respondent, on his arrest, is compelled to give bail to the marshal in a sum sufficient to cover the matter in demand, conditional for his appearance on return of the process. This stipulation was pronounced forfeited if he failed to enter his appearance on the day, and he was adjudged in contempt, and subjected to commitment or other process in satisfaction of the demand. This bail stipulation, it would seem, was originally regarded as a penalty, and its forfeiture was by way of mulct, and accrued to the admiral, and was not allotted to the satisfaction of the libellant. The appearance, according to the condition of that bond, was effected by entering into stipulation apud acta, with approved sureties, judicatum solvi; that is, to satisfy the final and all interlocutory decrees of the court in the cause. These are the fundamental properties and effects of an appearance in the English admiralty. Clarke, Praxis Adm. tits. 3, 4, 5, 9, 12; Browne, Civ. Law, 432. This was substantially so in the earlier maritime codes (Consulato del Mare, c. 40); and the regulations coincide with the course of the civil law in the same classes of procedure. Wood, Civ. Law. 245. The doctrine has also been embodied a long time in the rules of American courts. Dunl. Adm. Pr. 144; Greenl. Ov. Cas. This court, in its code of rules adopted in 1838, studiously varied the responsibility imposed on sureties by the antecedent practice. The appearance of the respondent was perfected by his becoming personally bound by stipulation to perform the judgment or decree rendered against him; but his sureties were placed on the same footing as those of the actor or libellant as to the amount they were to pay absolutely; in effect subjecting fidei jussores in admiralty in the position of bail to the action at common law. They could not be charged beyond the costs accruing in the litigation, if the defendant surrendered himself for commitment under the final decree. Betts, Adm. 40; Dunl. Adm. Pr. 147; Dist. Ct. Rules, 21, 38, 39.

The act of congress of May 8, 1792, § 2 (1 Stat. 276), designated the forms of process, and the forms and modes of proceeding in suits at common law, in equity and admiralty, with authority to the courts to vary them at discretion, "subject to such regulations as the supreme court of the United States shall think proper, from time to time, by rule to prescribe to any circuit or district court concerning the same." The act of August 23, 1842, § 6 (5 Stat. 518), if it confers no more ample powers on the supreme court to regulate the practice of the district and circuit courts of the United States, yet manifestly implies a mandate on the court to perform that duty. In January term, 1845, the supreme court exercised that power in relation to the practice of all the federal courts in causes of admiralty and maritime jurisdiction on the instance side of the courts. 3 How. Introd. And accordingly those directions, in respect to practice, became the supreme law to all inferior courts, in the particulars regulated by them. Rule 2 authorizes, in suits in personam, a warrant of arrest of the person of the defendant, in the nature of a capias, with an attachment clause against his property or credits, in case he cannot be found, or by a simple monition, in the nature of a summons, to appear and answer the suit. Rule 3 provides, that when the warrant of arrest is executed, the marshal may take bail, with sufficient sureties from the party arrested, by bond or stipulation, upon condition that he will appear in the suit, and abide by all the orders of the court, interlocutory or final in the cause, and pay the money awarded by the final decree rendered therein in the court to which the process is returnable, or in any appellate court. And upon such bond or stipulation, summary process of execution may and shall be issued against the principal and sureties by the court to which such process is returnable, to enforce the final decree so rendered, or upon appeal by the appellate court. This is the established form of the undertaking of stipulators in the English admiralty. Marr. Form. 272, 316. The standing rule of this court was, that on warrants to arrest the person in admiralty and maritime causes, the marshal might take bail in the form of a stipulation, and in the sum endorsed on the

warrant, conditioned for the appearance of the party on the return day to answer to the libellant in a cause civil and maritime, according to the course of the court. Dist. Ct. Rules, 21, 38. These rules are superseded and displaced by that of the supreme court, before cited. The marshal can no longer accept stipulations pursuant to the district court rule, but must exact them in the more ·comprehensive terms prescribed by the supreme court. Again: The object of the stipulation directed by the rule of the district court was to carry into effect the warrant of arrest, and nothing more. It contemplated no remedy beyond bringing the defendant personally before the court, and retaining him under its authority. When brought into court, rule 38 provided the manner in which the respondent should become a party litigant, which would perfect his appearance in the action. The subject-matter acted upon by rules 21 and 38 of this court is the same which is specifically regulated by rule 3 of the supreme court: the latter determines the course of proceeding on the arrest, and before return of the process, and also the method by which the appearance of the defendant is to be entered and perfected. The bond or stipulation to the marshal effects both, and after that is given, no further step is to be taken in court in order to subject the respondent to its authority, or to secure the fulfilment of judgments or decrees, and this necessarily rescinds or dispenses with all other procedures to those ends.

The counsel for the respondent contends, that as he remained in custody of the marshal till the return day of the process, and then gave stipulations for his appearance, pursuant to the rules of the district court, he is entitled to be discharged from arrest, and is not bound to execute the bond or stipulation prescribed by the supreme court rule, for three reasons: (1) That the bond demanded is in the nature of bail to the sheriff on an arrest at common law, and cannot be exacted after the return day of the writ, as the party is then in court, and the exigency of the writ is thus satisfied, and cannot act further in coercion of the defendant. (2) That rule 46 of the supreme court saves in full force the application and effect of the district court rules to an arrest so circumstanced, because the method of appearing is not fixed or regulated by any rule of the supreme court. (3) That rule 25 refers cases situated as these are, to the discretion of the court, to compel stipulations to be given for costs only.

The analogy of the common-law practice is not a very close one; but, so far as it goes, the argument from it rather tends to oppose than support the conclusion sought to be established by the respondent. The bail to the sheriff is similar in character to the civil law stipulation in judicio sisti. It only aims to secure the presence of the person in court. But the sheriff is not exonerated merely by producing the body. He must hold the party in custody until another and more stringent undertaking is entered into by him, consummating his appearance according to the course of the court, which is to abide there and perform the final order or judgment in the cause. So here, merely having the respondent under his authority on the return day of the process, or producing him in facie curiae, in no way satisfies the mandate of arrest or exonerates the marshal. The process continues in life and acting upon the defendant, until it fulfils the purpose of the arrest, which manifestly is to compel him to furnish a stipulation in the terms given by the rule, and to that end his custody must necessarily continue until the appropriate stipulation is produced, because the mandate of arrest is executed and made complete in that manner alone. In the view I take of the subject, the matter is specifically provided for by rule 3 of the supreme court, and there is accordingly nothing in these arrests outside the provisions of that rule, coming within the policy of rule 46, and still remaining under the authority of this court.

But it is insisted, for the respondent, that if this construction of the rules is adopted, that then rule 25 of the supreme court supplies the law of these cases, and relieves the party and his sureties from liability other than for costs; and whether that obligation shall be exacted, is left to the discretion of this court. The terms of rule 25 are, that in all cases of libel in personam, the court may, in its discretion, upon the appearance of the defendant, where no bail has been taken and no attachment of property has been made to answer the exigency of the suit, require the defendant to give a stipulation, with sureties, in such sums as the court shall direct, to pay all costs and expenses which shall be awarded against him in the suit, upon the final adjudication thereof, or by any interlocutory order in the process of the suit. This rule evidently has relation to the different modes of bringing a defendant before the court designated by the second rule. If he is proceeded against by citation or summons only, there is no compulsory authority acting upon him, and the libellant has no security, either against his person or his estate, for the demand in prosecution. All that is imposed upon the defendant by the rules in such cases is, that he shall indemnify the libellant against the costs to be created by his interposing a defence and contestation to the action. But in the coercive method of procedure by arrest of the body or attachment of property, the warrant being executed, rule 25 can, in no just interpretation, be understood as intending to deprive the libellant of the security thereby acquired, and set the defendant or his property free from the attachment on a mere stipulation for costs. Acting under the rule

thus construed, the court could not interpolate a condition that the defendant should also surrender himself for commitment; and if it is interpreted conformably to the claim of the respondent, a defendant need only, when arrested, refuse to give bail before the return day of the warrant, and then he will be entitled to a free discharge on intervening and giving a stipulation for costs, and thus all the privileges and securities provided by the rules of the supreme court, as consequent to his arrest, will be abrogated or evaded. I am satisfied such construction of the rules cannot be sustained. It was obviously the purpose of the supreme court to place the admiralty practice, in each of the United States courts, substantially on the same footing of the English practice. That practice, under the first process act, in 1789, was adopted by congress. 1 Stat. 93. It had remained essentially the rule of practice since that period, in the various district courts, but some deviations from it existed. [Manro v. Almeida] 10 Wheat. [23 U. S.] 486. The supreme court designed, by rules 2 and 3, to abolish such diversities of practice, and render the remedies and rights of parties uniform in causes of admiralty and maritime jurisdiction, in all the courts of the Union. The letter and spirit of the regulations of the supreme court, in my judgment, require that a defendant in custody, under a warrant of arrest in an admiralty case, shall so remain until he makes his appearance by giving bond or stipulation to satisfy the decree that may be rendered against him.

It is urged that the acts of congress abolishing imprisonment for debt govern this procedure, and that the federal courts have now no authority to hold parties under arrest on mere civil process. The acts of 1839 and 1841 (5 Stat. 321, 410), abolish imprisonment for debt, on process issuing out of any court of the United States, in all cases whatever where, by the laws of the state in which the said court shall be held, imprisonment for debt has been or shall hereafter be abolished. The act to abolish imprisonment for debt was passed in this state, April 26, 1831, and it enacts that no person shall be arrested or imprisoned on any civil process issuing out of any court of law, or on any execution issuing out of any court of equity, in any suit for the recovery of money, &c. 1 Rev. St. 807, § 1. This statute is made the law of the United States, also, by force of the acts of congress above referred to, and had the proceeding in these causes been on the law side of the district or circuit court, the defendant would have been exempt from liability to arrest, and to give surety to perform the decree of the court. The principle of the act would seem to include arrests by maritime courts (on matters of contract), and for the recovery of money, no less than when made by courts of law. But the words of the statute do not embrace both. They are limited to civil process issuing out of a court of law, and the legislature found it necessary to provide expressly for executions issuing out of chancery, as not embraced within the previous description of process from a court of law; much less can a maritime court be regarded as falling within the designation. The acts of congress of 1789, 1792, and 1793 demonstrate that laws relating to the practice of courts of law, do not include that of admiralty and maritime jurisdiction. Non-imprisonment acts, of the tenor of that passed in this state, had been very common, indeed almost universal, throughout the United States, previous to the promulgation of the code of rules by the supreme court in 1845. That court, in framing these rules, necessarily construed those laws as not applying to proceedings in maritime courts, and accordingly the antecedent scope and effect of that description of process was left in force.

It is unnecessary, and might be unbecoming, after the action of the supreme court upon the subject, to intimate what order this court might feel itself authorized or required to make, if the question as to the effect of those statutes upon its process [under the provisions of the acts of congress of 1839 and 1841 alone] [3] had been brought to its consideration prior to the promulgation of the rules of the supreme court. That code must be regarded an authoritative exposition of the non-imprisonment acts in relation to admiralty process. The duty of the inferior court is limited to receiving and executing the law given by its superior. The highest tribunal of the land having, since the enactment of those acts, established the process employed in this case, I shall forbear any further general reasoning upon the subject, and hold these warrants of arrest valid, and and on all the points raised, deny the motion of the respondent for his discharge. Order accordingly.